Order Filed on January 6, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: **FAUZAN RAZZAQ,** Debtor. | Case No.: 21-17142<br>Chapter: 7<br>Hearing Dates: October 18, 2022<br>November 8, 2022<br>Judge: John K. Sherwood |
| **MAERSK A/S trading as MAERSK LINE AND SAFMARINE,** Plaintiff,<br>vs.<br>**FAUZAN RAZZAQ,** Defendant. | Adv. Pro. No.: 22-01001 |

# OPINION

## I.  INTRODUCTION

Plaintiff Maersk A/S trading as Maersk Line and Safmarine ("Maersk"), an ocean freight shipping company, filed this motion for summary judgment seeking a determination that the debt owed to it by Fauzan Razzaq ("Debtor") is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The debt arises from a default judgment entered in favor of Maersk and against the Debtor for $25,560,937.85. Maersk obtained the default judgment against the Debtor based on his

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document      Page 2 of 10

Page 2
Debtor: Fauzan Razzaq
Adv. Pro.: 22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

misdeclaration of cargo in containers Maersk shipped to India. In his response to Maersk's motion, the Debtor alleges he did not know what was in the containers because he was defrauded by a third party. Because gross recklessness meets the intent requirement under 11 U.S.C. § 523(a)(2)(A) and the Debtor warranted to the contents of the containers relying solely on information he received from a third party, the Debtor acted with gross recklessness and is not entitled to discharge his debt to Maersk.

## II.    JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## III.   FACTS AND PROCEDURAL HISTORY

The Debtor, who transacted business under Seatrade Recycling, LLC and Century International M&A, was a middleman, who made money connecting sellers and buyers of scrap items. [ECF Nos. 18-2, ¶ 30-34; 21, ¶ 6]. Typically, a buyer looking for certain scrap items would contact the Debtor, who would find a seller of the scrap items, arrange for the loading of shipping containers, and arrange for transportation of the containers to a port. The Debtor would then forward the shipping line booking number to the buyer of the scrap items. The buyer would then "handle everything." [ECF No. 25, pp. 49-50, 52]. The Debtor would get paid a certain amount per container shipped, typically $50 per container. [ECF No. 25, p. 50].

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document      Page 3 of 10

Page 3
Debtor: Fauzan Razzaq
Adv. Pro.: 22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

In 2020, Mason Impacts Private Ltd., a company the Debtor had "[known] quite some time," contacted the Debtor about shipping waste paper to India. [ECF No. 25, pp. 40-41]. The Debtor deviated from his usual way of doing business because his only role in this transaction was to arrange for the shipping of the containers. He was not asked to find suppliers in the United States because Mason Impacts Private Ltd. allegedly had a supplier lined up for waste paper. The Debtor testified he had never done business like this before. [ECF No. 25, pp. 42-43, 53-54].

The Debtor contracted with Maersk to ship 433 containers to India. Maersk believed the containers contained waste paper. Based on that information, Maersk accepted the cargo. [ECF No. 18-3, ¶¶ 3, 5 and 9]. When the containers got to India, Maersk and Indian customs agents found that the containers did not contain waste paper, but scrap tires. Maersk and the Debtor both knew that shipping scrap tires to India is restricted. Maersk returned 71 of the 433 containers to the United States. The other 362 containers remained in India. [ECF No. 21, ¶¶ 3-4; 18-3, ¶ 9]. As a result, Maersk incurred $25,560,937.85 in damages which is memorialized in the District Court default judgment dated June 30, 2021. [ECF No. 18-2, Ex. C].

Before shipping cargo, Maersk creates bills of lading based on a shipper's warranty as to the description of the cargo. Specifically, Maersk's bills of lading provided:

> The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof *have been checked by the Shipper* on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, *are adequate and correct*. The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs or other illegal substances or stowaways, and that the Goods will

Page 4
Debtor:         Fauzan Razzaq
Adv. Pro.:      22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

---

> not cause loss, damage or expense to the Carrier, or to any other cargo.

[ECF No. 18-3, ¶ 5, emphasis added].

The Debtor had an opportunity to review the bills of lading before the cargo was loaded. [ECF No. 18-3, ¶¶ 5-7]. In his certification in opposition to summary judgment, the Debtor stated he certified the contents of the containers, but did so using information provided by Ravi Sharma,[1] a third party, who Debtor claims was teaching him "how to do the shipping" and defrauded the Debtor in the process. [ECF No. 21, ¶¶ 6-7]. Essentially, the Debtor admits that he provided the false warranties that the containers contained waste paper, but he denies doing so with fraudulent intent.

Shortly after the District Court in Florida entered default judgment against the Debtor for $25,560,937.85 in damages, the Debtor filed a Chapter 7 petition. [ECF No. 1, ¶ 9]. Maersk filed the complaint in this adversary case on January 3, 2022. [ECF No. 1]. The parties unsuccessfully attempted to resolve their dispute through mediation. [ECF No. 24].

On September 30, Maersk filed its summary judgment motion, seeking an order that the Debtor's debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(4). On October 11, the Debtor submitted a short and limited objection to the summary judgment motion. He did not dispute most of the facts in Maersk's summary judgment motion but alleged that he did not know the containers were filled with scrap tires because he was defrauded by Ravi Sharma. [ECF No. 21, ¶¶ 6-7].

---

[1] The exact nature of Ravi Sharma's and the Debtor's relationship is unclear.

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document      Page 5 of 10

Page 5
Debtor:        Fauzan Razzaq
Adv. Pro.:     22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

## IV. ANALYSIS

Fed. R. Bankr. P. 7056 incorporates Fed. R. Civ. P. 56. Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A Court must grant summary judgment if the movant shows there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the record could not lead a "rational trier of fact" to rule in favor of the nonmoving party, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

First, it is vital to determine whether there is a genuine dispute as to the material facts. If the nonmoving party fails to address the moving party's factual assertions, the Court may consider the facts undisputed for summary judgment. Fed. R. Bankr. P. 7056(e). The Debtor does not dispute most of Maersk's asserted undisputed facts. The Debtor admits that the containers contained scrap tires and that his warranties were inaccurate. [ECF No. 27, pp. 2-3]. However, the Debtor claims he will prove at trial that he sincerely believed the containers contained waste paper and will explain the reasonableness of his belief. *Id.* at 3. The Debtor does not dispute or allege any other facts in his responses to Maersk's summary judgment motion.

Maersk cites 11 U.S.C. § 523(a)(2)(A) and (a)(4) to argue the Debtor is not entitled to discharge the debt he owes Maersk.[2] Section 523(a)(2)(A) prevents a discharge from any debt for

---

[2] Section 523(a)(4) denies a discharge from debt arising from fraud while acting as a fiduciary, embezzlement, or larceny. Maersk cannot prove the Debtor's debt is nondischargeable under § 523(a)(4). Under § 523(a)(4), Maersk cannot prove embezzlement, larceny, or that the Debtor was a fiduciary. Embezzlement requires a creditor to show it entrusted property to a debtor, who then misappropriated the property. *In re Bucci*, 493 F.3d 635, 644 (6th Cir. 2007). Larceny requires the taking of another's property with the intention of converting it. *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). The Debtor's actions in this case amount to neither. Lastly, the Debtor was not acting in

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document    Page 6 of 10

Page 6
Debtor:        Fauzan Razzaq
Adv. Pro.:     22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

money, property, services, or an extension, renewal or refinancing of credit obtained through "false pretenses, a false representation, or actual fraud . . . ." To find that a debt is nondischargeable on the basis of § 523(a)(2)(A), the Court must find (1) the debtor received money through a material misrepresentation, (2) knew the representation was false or made the representation with gross recklessness as to its truth, (3) intended to deceive the creditor, (4) the creditor reasonably relied on the misrepresentation, and (5) the creditor sustained damages as a result of that reliance. *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997).

Several elements necessary to establish nondischargeability under § 523(a)(2)(A) are undisputed. It is undisputed that the Debtor ordered and received valuable shipping services through a material misrepresentation. Maersk relied on the Debtor's statement that the containers contained waste paper. The reliance caused damages for Maersk. The amount the Debtor owes Maersk is undisputed and set forth in the final judgment of the District Court in Florida.

The Debtor argues that Maersk's reliance on the Debtor's representations was not justifiable and reasonable. The United States Supreme Court held that reliance under § 523(a)(2)(A) requires justifiable reliance which, according to the Court, is a lower level of reliance than reasonable reliance. *Field v. Mans*, 516 U.S. 59, 72-74 (1995). But the Court still regarded reasonable reliance as relevant for the purposes of § 523(a)(2)(A). *Id.* at 75. The Debtor argues that Maersk also had a responsibility to investigate the contents of the containers, especially given the significant costs Maersk could incur if the contents of the containers were

---

a fiduciary capacity. *In re Davis*, 476 B.R. 191, 195 (Bankr. W.D. Pa. 2012) ("To be a fiduciary for dischargeability purposes, the debtor must be a trustee under an 'express' or 'technical' trust.").

Page 7
Debtor: Fauzan Razzaq
Adv. Pro.: 22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

misdeclared. Thus, the Debtor contends it was not justifiable nor reasonable for Maersk to rely solely on the Debtor's warranty.

The Debtor's argument amounts to a general and conclusory assertion that Maersk had a duty to check the contents of the containers. Though the argument has some common sense appeal, Maersk has explained it could not investigate the contents of the containers. In order to check the containers, Maersk would have had to break the seals on the containers. The sellers sealed the containers after loading them with the cargo and the seals could not be broken until the containers reached their destination. [ECF No. 28-1, pp. 19-20]. Also, the Debtor acknowledged in his deposition that shipping lines do not "check what is inside the containers." [ECF No. 25, p. 44]. Rather than it being Maersk's responsibility, it was the Debtor's duty to check the contents of the shipments, under both statutory law and the language on the bills of lading. *See* 46 U.S.C. § 41102(a), [ECF No. 18-3, ¶ 5]. It is not unreasonable or unjustifiable for Maersk to assume its customers will abide by its shipping instructions and applicable statutes. The Debtor has not shown that it was unjustifiable or unreasonable for Maersk to rely on the Debtor's representations.

Given that the first, fourth and fifth elements of the *In re Cohen* test are met, the issues before the Court are whether the Debtor's conduct amounts to a knowingly false or grossly reckless representation, and whether the Debtor intended to deceive Maersk. The Debtor has contested Maersk's allegations that he made a <u>knowingly</u> false statement about the content of the containers and intended to deceive Maersk. The Debtor's contention that he was defrauded by a third party must be accepted as true for summary judgment purposes. Knowing this, counsel for

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document    Page 8 of 10

Page 8
Debtor:        Fauzan Razzaq
Adv. Pro.:     22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

Maersk has focused on its argument that the representation by the Debtor was made with gross recklessness.

In *In re Bocchino*, 794 F.3d 376, 380 (3d Cir. 2015), the Third Circuit found that gross recklessness satisfies the intent to deceive requirement under § 523(a)(2)(A). The *Bocchino* case involved a stockbroker who solicited investments in two fraudulent ventures without conducting an independent investigation beforehand. Like the Debtor in this case, Mr. Bocchino argued that he did not knowingly make any false statements to his investors. Thus, the Court had to consider whether a grossly reckless statement satisfied the scienter requirement of § 523(a)(2)(A). The Court cited the Restatement (Second) of Torts, which states that a misrepresentation is fraudulent if the maker (1) knows or believes that the representation is not true, (2) does not have confidence in the accuracy of the representation, or (3) knows he does not have the basis for his representation. RESTATEMENT (SECOND) OF TORTS § 526 (1974).[3]

The Debtor argues that the *Bocchino* holding should be limited to situations where the maker of the false representation is a fiduciary, such as a stockbroker. [ECF No. 27, pp. 6-7]. The Debtor was not acting in a fiduciary capacity here. But, the Third Circuit's holding is not limited. It is broadly based on the Restatement (Second) of Torts and other sections of the Bankruptcy Code. Thus, even though it can be factually distinguished, the *Bocchino* holding applies in this case.

---

[3] The Court also cited *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013), where the United States Supreme Court found reckless conduct, as well as intentional conduct, satisfied the intent requirement for the defalcation provision under § 523(a)(4), and *In re Cohn*, 54 F.3d 1108 (3d Cir.1995), where the Third Circuit allowed a party to prove intent by showing reckless indifference or disregard to the truth of a statement in the context of § 523(a)(2)(B).

Debtor:         Fauzan Razzaq
Adv. Pro.:      22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

---

Based on the undisputed facts, Maersk has met its burden of proving that the Debtor acted with gross recklessness and demonstrated it is entitled to judgment as a matter of law. At first blush, it was hard to reach this result at the summary judgment phase of the case. Did the Debtor "intend to deceive" Maersk by making a misrepresentation based on his good faith belief of the word of a third party? The answer here is "yes" because the Debtor was the "shipper" in these transactions and he had the duty to verify that the cargo in the containers was waste paper.[4]

Under common law, a misrepresentation is fraudulent when the maker did not have a basis for his representation. RESTATEMENT (SECOND) OF TORTS § 526 (1974). When a party makes a representation that "turns out to be untrue, but was not false to his knowledge," the representation is fraudulent if it was made about "a specific fact or facts susceptible to exact knowledge[.] . . . [T]he falsehood in such a representation lies in the defendant's affirmation that he had the requisite knowledge to vouch for the truth of his assertions, and that being untrue, the falsehood would be wilful and therefore fraudulent." *Schlossman's, Inc. v. Niewinski*, 12 N.J. Super. 500, 507-08 (App. Div. 1951). Thus, a misrepresentation can be fraudulent even when the declarant was honestly convinced it was true from sources he believed were reliable. RESTATEMENT (SECOND) OF TORTS § 526 cmt. c (1974).

The Debtor admits he filled out "the forms stating the containers held used paper products when, in fact, they held used tires." [ECF No. 27, p. 2]. The Debtor's warranties for the

---

[4] This decision is also difficult because of the amount of the debt to Maersk ($25,560,937.85) as compared to the Debtor's limited assets and income. Since it appears that the Debtor's fraudulent representation here was based more on his carelessness and lack of diligence than his intentional desire to enrich himself at Maersk's expense, the result is harsh. Maersk should consider a good faith proposal from the Debtor to satisfy some portion of the debt from assets or income in excess of the Debtor's reasonable living expenses. If necessary, the parties should return to mediation to explore a resolution along these lines.

Case 22-01001-JKS    Doc 30    Filed 01/06/23    Entered 01/06/23 15:54:23    Desc Main
Document    Page 10 of 10

Page 10
Debtor: Fauzan Razzaq
Adv. Pro.: 22-01001
Caption of Order: **OPINION RE: MAERSK A/S trading as MAERSK LINE AND SAFMARINE'S MOTION FOR SUMMARY JUDGMENT**

bills of lading were susceptible to exact knowledge because the Debtor could have checked the contents of the containers. As recognized above, the Debtor had a duty to check the contents of the shipments, under both statutory law and the language on the bills of lading. Therefore, under the common law, even if the Debtor honestly believed the information he received from Ravi Sharma, he still acted fraudulently and with gross recklessness by making a warranty with respect to the contents of shipping containers without the requisite knowledge as to the truth of the warranty.

## V.    CONCLUSION

Maersk's Motion for Summary Judgment is granted. The Debtor acted with gross recklessness by representing, without a reasonable basis for his knowledge and without reasonable investigation, that the containers Maersk shipped contained wastepaper. The Debtor is not entitled to the discharge of the debt he owes to Maersk under 11 U.S.C. 523(a)(2)(A).

An Order consistent with this Opinion is being entered by the Court.

**DATED: January 6, 2023**

_____
Honorable John K. Sherwood
United States Bankruptcy Court